Case number 24-5269. Alexander R. Kursar, Appellant, v. Daniel Driscoll, Honorable Secretary of the Army. Mr. Pristera, for the Appellant. Mr. Walker, for the Envelope. Proceed when ready, Counsel. Thank you very much, Your Honor. Just one moment. May it please the Court, my name is Brian Pristera. I'm here on behalf of Mr. Alexander Kursar for this appeal. This appeal comes from a decision of the District Court on an Administrative Procedure Act decision. The case against the Army and the Army Board of Correction of Military Records for an arbitrary and capricious abuse of discretion in a decision that's dated from 2020 in this case. Now, Mr. Kursar's military history is lengthy and complicated. It's detailed in our brief, so I'm not going to go through the entirety of that. Suffice it to say, however, it started in 1983. He served multiple deployments as a Special Forces qualified soldier. At some point during the course of his service, his Special Forces qualification became a contested issue between him and the Army. Now, during the course of about two decades, he served in both the Washington Army National Guard, the California Army National Guard, the United States Army Reserve, and on active duty in periods of deployment and transfer between those branches at various points. And so the issue that comes to this court today is related to the documents that both qualify him for his Special Forces qualification, which started back in 1983, and also with an NGB-22 is the name of the form, National Guard Bureau 22, which is a form that summarizes the completion of a period of National Guard service. Every time a member serves in the National Guard, you get an NGB-22 at the time that you get out of that period of service. And whether those documents were fraudulent or not, or procured by fraud in some manner. So these allegations initially arose in the early 2000s, and it was determined that Mr. Kerser had fraudulently enlisted in the California Army National Guard and the U.S. Army Reserve. Before we dig more into it, I mean, I think we're all familiar with the history. Yes, Your Honor. It's laid out in the briefs. My colleagues have questions I don't mean to impose. But this court did ask you all to address a jurisdictional question for us about whether this district court or we have jurisdiction, which turns on the amount of back pay that is requested here. Do you know how much the dollar value of the back pay that is requested here? No, Your Honor. The government plausibly contends it's over $10,000, the jurisdictional threshold, given the number of years for which Mr. Kerser seeks back pay. And Mr. Kerser's reply doesn't dispute that. So should we accept that? We don't have jurisdiction over the back pay claim. I think that that's correct, Your Honor, in terms of the amount of money. Yes, so we don't have any jurisdiction over the back pay claim. Well, Your Honor, as I said in my brief, I don't think the – it's our position that the Tufter Act doesn't apply to this case because the back pay is not – Right, you had made an argument that it is equitable rather than monetary relief. But if we disagreed on that point, then you're not disputing. That's correct. If you disagree on that point, then I would concede the rest of the argument on that basis. Yes, Your Honor. Sorry, what would you concede? Suppose we think the back pay claim has to go to the Court of Federal Claims. What are you conceding? Only that if it's non-equitable, if the court determines that the back pay was non-equitable, then that issue would have to be raised at the Federal Court of Claims. That would be the only point that I would agree with. I don't have anything to say otherwise. I'm a little confused about what we're supposed to do with this $10,000 threshold. You haven't figured out how much back pay he's owed? If it happens to be less than $10,000, $9,999.99, or even just $10,000 flat, but if it's less than that, less than $10,000, we have – this court doesn't have appellate jurisdiction over that claim. Over that claim, yes, Your Honor. It's your burden as an appellant to demonstrate not only district court jurisdiction, but our jurisdiction. And it sounds like we've got educated guests from the government, but no one making any actual calculations that determine our jurisdiction. Yes, Your Honor. I think that's because it was viewed as an equitable request based on the fact that there's no – it's viewed as an equitable request, but it's also – it would also be based on exactly where the constructive service, had it been granted, would have been placed in a timeline. And so that all matters in terms of the calculation. I think there's probably different numbers that you could arrive at depending on what the answers to those questions are. So it's not a request for specified damages or like a liquidated damages type of claim. Rather, it is a request that reflects the result of other decisions that would have been made by the board. I understand it's complicated inquiry, but we don't have jurisdiction to hear this appeal at all. A single one of the issues, equitable or not, if – or the other equitable claims, if not, if this is under $10,000 or flat with $10,000. Yes, Your Honor. So how do we know we have jurisdiction? I get it's complicated, but we can't hear any of your arguments if we don't have that jurisdiction. I definitely appreciate the court's dilemma on that. I don't have an answer for the court. Did he at some point in this long timeline start receiving retirement pay? He's – I believe so. I would want to get – I would want to clarify that 100 percent for the court, but I believe in 2019 he became transferred to the retired reserve and receiving retired pay, which is the age 60. So if back pay were owed, I assume it would be an offset for whatever retirement he got. Maybe it would be less, the theory being he would get more retirement if he had these extra points. But it's not just figuring out the back pay amount. It's also then offsetting whatever he already got in retirement. That's correct. So if there was an increase – It's getting more complicated, this calculation. Yes, Your Honor. So if there's an increase in points or if he also requested a consideration for resurrected promotion to the next grade, if either of those things were granted, the additional points or additional rank change, then obviously that would impact the retired pay as well. That's correct. Yes, Your Honor. And that would be part of your back pay claim? Well, I think that – I think the points are not – are sort of an equitable calculation, but then if he's actually receiving retirement pay. Yeah, I think that that would be different. I think that the difference in retired pay would be different than back pay. Back pay, I think, refers to pay for work that should have been performed in orders or time that should have been worked previously, whereas the retired pay calculation is a little different because you wouldn't be necessarily awarding him additional retired pay. You'd be awarding him a rank increase or you'd be awarding him additional points, which would have a collateral effect of increasing his retired pay. I understand that. I think I'm not being clear about my questions, and maybe it's – did he receive retirement pay, start getting it in part because he wasn't allowed, he wasn't given promotions and these types of things? Like, would he have stayed active duty longer and not started retirement pay in 2019 or whenever he did if, in fact – I mean, there's all these sort of counterfactuals we have to play through here. Because if he had, then you do have to kind of subtract out whatever retirement pay he got from whatever check the government would have to cut. So we're talking about a non-regular retirement, which is a reserve retirement, which is a little bit different because many, many members, as would be the case with Mr. Kerser, would stop serving as a reservist, but they don't collect retired pay until they reach age 60. And so I believe that the retired pay eligibility date for Mr. Kerser was in 2019. I will double-check that, but I believe that that's correct. Right. But I don't know that he would have served until 2019 or not under the circumstances, but that's – I'm not sure if I'm answering Your Honor's question with that. I don't think that there's a situation here where he was – the claims – You're eligible for retirement pay at 60. You don't have to retire at 60, even in reserves. Well, you're eligible for – oh, yes. In the reserve, there is mechanisms that enable certain people under certain circumstances to remain past age 60. It's not common. Okay. And you're not claiming that he would have been eligible for that? I'm not. No, Your Honor. So 2019 at a bare minimum, retirement starts running. Yes, Your Honor. Does any back pay claim then stop at 2019? This would help with at least one of my math questions. Yes, Your Honor. Well – yes, Your Honor. The back pay claim would have been related to points –  I wouldn't even say up to 2019. I think it would have been points between 2008 and 2012, maybe 2014. Okay. I don't – I just don't have a – I'm sorry, Your Honor. I don't have, like, a hard left and right limit on the calendar of when that would have started and stopped. That's fine. And then my next question is, so he starts getting retirement pay, we're going to assume 2019. And again, you know, your arguments about points and things like that that he would have gotten, so it would have been a higher retirement pay. And let's say the district court were to find that, you know, he wins and as a result, one of his injuries here is not on the back pay, but he should have been getting 500 more a month for retirement pay. Is a claim for that 500 more a month for however many months, is that something that has to go to the claims court too? No, Your Honor. They actually – not for the points, but once that's all determined, I didn't get the pay I should have gotten in retirement, not salary. That doesn't go to claims court too? No, Your Honor. I'd say – and we're obviously over time here. They'll obviously answer your question. No, Your Honor. Again, the retired pay is a function of what his military records show. So once the military record correction is made, either the points added or his rank corrected, the retirement pay is by default. It's not a matter that needs to be ordered by anyone, not by the Board of Corrections. Obviously, at this point, he needs seven years of catch-up. Well, he needs the records correction, but he doesn't need the court or the Board of Corrections to order the increased retired pay. So the order – The military will take care of that itself. Yes, Your Honor. So if the Board of Corrections had granted relief, say, and said, hey, we're going to give you these extra points and we're going to give you a rank upgrade promotion, then the Department of Army Finance and Accounting Service would have automatically recalculated his retired pay and paid him at the increased rate that he was owed because it's not a discretionary matter at that point. No, I understand it's not discretionary. It's just, you know, if everything were to go Mr. Kershner's way in this litigation, then he would have a deficit in the retirement pay he's gotten between 2019 and 2026. That's correct. And you said the military would just on its own correct that. That's correct, I do. I absolutely think that. Yes, Your Honor. He would need a court to order that. That's correct. Okay, that helps me on that aspect of the issue. Yes, Your Honor. I know I'm over my time. If there's any additional questions about the briefings, I'm happy to answer them pending the court's question or permission to continue. I just had one more. Turn to JA 512. If I may have one moment to grab that. Yes, Your Honor, I'm here. And this is a document that's still under seal? Yes, Your Honor. Okay, so I guess I'm going to be kind of elliptical in how I discuss it. For your race judicata argument or your statutory NUSC argument about what binds subsequent board decisions, I'm not sure you've argued that this document bound the 2020 board, have you? If I may just have a brief moment to refresh my memory on that document. This came after the 2012 board's decision? The document then issued? Yes, Your Honor. You've argued about, as I've understood your argument, it's been the 2012 board decision is what, either it's race judicata or 10 U.S.C. 1552 binding on the 2020 board, correct? That's correct, Your Honor. I haven't argued this document. That's correct, Your Honor. Okay. There's numerous claims that were made both in the 2012, that generated the 2012 decision. I understand that. And the 2020 decision, Your Honor. And so this document was not argued as part of it. Okay.  All right. Thank you very much, counsel. Thank you very much, Your Honor. Give me a couple of minutes for rebuttal. Thank you, Your Honor. Good morning, and may it please the court. Assistant United States Attorney Johnny Walker on behalf of the Secretary of the Army. I'll address the jurisdictional question that Your Honor was talking to my friend about. We think that the complaint here, or at least the back pay claim, is an explicit request for money. This court deals with a lot of cases that are marginal where we're asking if the complaint in essence seeks money, and we ask things like whether or not there's substantial benefit apart from the money. Here you have an explicit request for money. The relief provision of the complaint asks the court to order the Army to pay back pay to Mr. Kerser, and he doubles down on that in his summary judgment briefing and says that the case has been pending so long that the court should do away with remanding it back to the board and just order the payment of money. I agree with that, but if the request for money can fairly be read to exceed $10,000, right, we're out of little Tucker, and we just have a normal situation where the back pay, the district court couldn't hear the back pay claim, but it could hear all of the APA claims seeking non-monetary relief, and district court has jurisdiction over those claims, and we have jurisdiction to review those claims. I think that's right, and that's a point we make in our brief. The only issue that that back pay claim stemmed with a request that the plaintiff had made in the district court to recalculate some of their retirement points as a result of Mr. Kerser being reinstated to the reserves by a prior board, the only claim that the only issue that they are raising on appeal is Mr. Kerser's claim that he's entitled to the special forces tab, and there is no, I don't know if there would be any monetary benefit to receiving the special forces tab. That's just a straight out APA. That he has not made any claim for back pay connected to the restoration of the special forces tab, so we think that that is the only claim on issue on appeal here. So the only, sorry, the only jurisdictional hurdle really is if the back pay claim in the district court was less than $10,000, was for less than $10,000. Right. I mean, it seems awfully likely that it was more, but can you just walk us through that? It would have been the easiest thing in the world to specifically allege, and it's not specifically alleged.  Nobody has calculated that out. It certainly looks like it would be well over $10,000, and I think at that point what it's incumbent. What do you mean when it almost, it certainly looks like? Given the amount of years and the pay at issue, it looks like it would be around $30,000. I don't have a specific calculation to you, but it facially appears to be over $10,000. At that point, I think what the plaintiff needs to do is file something in the district court specifically disclaiming any intent to recover over $10,000, which a plaintiff can do to bring them into the Little Tucker Act. But again, I don't think that poses a jurisdictional issue here in the appellate court because they're not raising any claim connected to the request for back pay. They've simply dropped that on appeal and are just after the special forces tab. And in this context, I gather claim splitting is routine. I mean, that would be the only thing that we can decide, the APAA claim, and if he has some back pay sequelae or claim that he hasn't brought here now, the district court could decide whether that's properly before it or needs to go to the Court of Federal Claims. I don't know that anybody would agree to claim splitting in this case. Sequential. I think what probably would have happened if this came up in the district court and it didn't come up until this court considered the motion for summary affirmance, I think what would have happened if this came up in the district court is Mr. Kersar would have had the option to either withdraw the request for back pay and just seek APA-type review that would have resulted consequentially in payment of pay had he prevailed or filed the disclaimer that I mentioned. But I think what probably would have happened is some sort of mechanism to keep everything together in the district court here. But if, let's say, the district court ruled in his favor on his APA claim and he did want to pursue back pay, can he then – I mean, isn't this something that the Supreme Court in the state opinion and was it the NIH case, there's a sequence saying you get to go over to – once the APA decision is made, you get to go over to the Court of Federal Claims if you have a claim for money against the government? Well, I mean, what normally would have happened is you have sort of a Bowen-type situation where you get an APA decision that results in the agency paying you money. I suppose if he had that decision, the agency did not follow through and pay the money, there may be a money-mandating claim. Let me ask you whether, in your view, the record explains why the California National Guard upgraded plaintiff's discharge in 2004. Can I just follow up on one point? Oh, go ahead. Sorry. I just wanted to follow up on that answer. So did I understand – so there was not a time limitation, any time limit on taking a claim for back pay to the Court of Federal Claims? I imagine he gets all the approval relief, at least the TAP or whatever else he gets from district court, which has back pay consequences. The time for filing that claim in the Court of Claims wouldn't run from the 2020 board decision. It would run from the agency, the military's refusal to then adjust his pay automatically? Or does he have – are we worried about sort of the six-year mark here? Are we worried about him running out of time to go to the Court of Federal Claims? I'm not sure about that, Your Honor, but I don't think it matters because there's no way he's getting money at this point because he has not pursued on appeal his claim for back pay. So that was connected to an adjustment to the retirement points, which he has not pursued on appeal. Do you understand the district court to have entered judgment on the back pay claim? I think count nine of the complaint, what was for back pay. I don't think the district court had jurisdiction over that claim, but it seems to have dropped out of the summary judgment briefing, and the court's order on its face resolves all claims and says it's a final order. What do you think happened to it? It's tough to tell. There are a lot of targets in this case, and they have moved around as the briefing has unfolded. I'm not sure whether the district court has entered judgment on that claim. I think if the court determined that it did, and it determined that district court lacks jurisdiction over it, it would be a vacate just to dismiss precisely. I had thought maybe the back pay claim was abandoned on the summary judgment briefing. If you go through the briefs, it just doesn't really appear anywhere. It may well have been. It's certainly abandoned here on the appeal, where we're only looking at the Special Forces tab. It's abandoned on appeal, but it's the district court jurisdiction that matters for Whittle-Tucker purposes.  I understand there may be a need to adjust that judgment to a dismissal for lack of jurisdiction, if that is what the court determines. So if the district court did have jurisdiction over his back pay claim, we could still hear an appeal that excludes any appeal of the order on that claim, as long as our consideration is limited to the APA? Yes, because I think the district court could have just dismissed out that claim for lack of jurisdiction. If we treat the district court as having abandoned or dismissed tacitly that claim, but I'm a little bit confused about whether you think, and this is why I asked about the sort of splitting. Let's say he only is raising back pay that he thinks is going to be a result. You talked about this, a follow-on of a ruling in his favor, that in terms only is an APA ruling about the way his service was described and whether he had the tab that he thinks he was entitled to. If riding on that is back pay in excess of $10,000, does that affect our jurisdiction? I'm sorry, you said in your hypothetical it is only an APA claim, and the only relief requested is remand to the agency for further proceedings, consistent with the district court's opinion. I think there may be issues where you get into the types of situations that this court has addressed in cases like Kidwell and Toutle and Smalls, where there's a question as to whether or not the complaint in essence seeks money, and there are questions about whether or not there's significant relief connected with or significant benefit connected with the relief apart from money. But I think those are rare cases where there's a complaint that doesn't seek money, just seeks review of agency action, and those are considered to in essence seek money. So I think in your hypothetical, the district court probably would have jurisdiction over that. And we would have jurisdiction over the appeal. And by deciding we had jurisdiction, we would not be ruling implicitly on the availability of back pay relief. It just isn't in the case as presented. It could come into the case on a remand to the board. If you had the back pay case issue before you, it would be arguments about the board didn't correctly recalculate my retirement points after I was restored to the reserve for the following reasons. But none of those arguments have been made. But if they were made without an explicit request of money, which there is in the complaint here, the court would have jurisdiction over those, yes. Court would have jurisdiction. Yes, probably. By our court. Yes. Opposed to Federal Circuit. If it explicitly seeks money or in essence seeks money. But what I'm saying is if the complaint just seeks APA review of the board decision and that APA review may result post remand in the payment of some money, then you have the Bowman v. Massachusetts situation where there is still APA jurisdiction. We would have jurisdiction because we can safely conclude that the monetary dispute exceeded $10,000 or we would have jurisdiction regardless. If all that he's seeking is remand to the agency and there's no explicit request for money, regardless of the amount that he would down the line be able to recover, we would have jurisdiction. If that was all he sought in district court. Right. Okay. Sorry. Okay. You had a line in your brief in response to their invocation of 10 U.S.C. 1552. Sorry. D. No. A4.  That requires, except when preferred by fraud, a correction under this section is final and conclusive on all offices in the United States. And you said the board doesn't make any corrections. Is JA 512 such a correction following the 2012 decision? Yes, but I believe that is the promotion following that decision. But, I mean, the 2020 board did not undo that correction. That correction remains in place. All the 2020 board did was decide the separate issue that he did not meet the qualifications for the special forces. I find it awful. I mean, if that decision on 512 is final and conclusive on all offices of the United States, are the board members officers of the United States? Interior officers? Yes. There's a binding on them, what the Secretary of Army said on JA 512. Would there be inconsistency with finding he was never? I want to be precise. Special forces? To be precise with the statutory language, what it says is the corrections are binding. And the 2020 board did not undo that correction. You will nowhere find anything that says that sort of findings and conclusions are binding on future boards. And if they were, he definitely would not get the special forces tab because two separate boards previously concluded that he did not meet the qualifications for it. Did you argue race judicata on that basis in district court? We didn't respond to any argument on race judicata because no race judicata argument was raised. You didn't raise your own affirmative race judicata argument. No, we didn't. Of course you didn't. So that argument's not before us. No, I'm assuming that their race judicata argument applies. They lose because the board would have been bound by the issues determined by the 1990 board. I'm focusing, just to be clear, on 10 U.S.C. 1552. If you want to call that a race judicata argument, whatever. He's promoted to a status that is a special forces status. Could he be promoted to that status and special forces with status and pay level if he was not qualified? Could that have happened? No, he should not have been. I'm saying there's a document here promoted to that status by the Secretary of the Army, effective 2012. The Secretary couldn't have done that if he wasn't qualified. But he could if it was a mistake and if it was erroneous. A decision was made that he qualified for that. That's not correct. No decision was made that he qualified for the special forces role. Then how on earth was he given that role, that status, and that salary? With the 2012 board. In this order. Not by the 2012 board. By the Secretary of the Army in this document that I'm referring to. That follows the 2012 board decision, right? But they make recommendations. I assume that was the point of your argument in your brief. That the board itself doesn't make the correction. The Secretary of the Army does. Most of the time. That's what happened here. So what happened? Yes. What happened here? Secretary of the Army agreed with the recommendation as reflected in this decision here, which said, as of 2012, I'm not going to read more. But there's an awful lot of stuff that seems quite inconsistent with the 2020 board's reasoning. He's awarded the status effective 1 December 2004. And with this rank. Right? So he has that. The Secretary of the Army has determined that he's qualified for it and he hasn't. Correct? No, incorrect, Your Honor. The Secretary of the Army's decision that he's qualified for it and gets it. Not the decision that he's qualified for it and gets it. I'll explain if I may. So the Secretary did not make a determination that he is special forces qualified. What the Secretary was doing with that order was implementing the decision of the 2012 board. What the 2012 board decided was that Mr. Kursar should not have been separated by a separation board from the Army Reserves. Because in the meantime, the California Army National Guard had upgraded his discharge from other than honorable to honorable, which was the basis for that separation. Does 18040 mean he's getting a special forces salary? I'll continue. I'm sorry? Does 18040 mean he's getting that salary? Yes, but if I can continue. Does 18040 mean he has that status? Yes, but if I can continue the explanation of how he got that status. When the board undid that discharge, it also determined that he would have been promoted in the meantime had he not been discharged. So all the 2012 board was doing was undoing the discharge and giving him the promotion that he would have gotten in the meantime, which put him back. You told me in the brief it doesn't matter what the board did. It was just a recommendation. What matters is what the Secretary of the Army did. That was the correction. This was your argument in your brief. This is what the board recommended that the Secretary do. But I'm telling you what the Secretary of the Army did. But that 2012 board, neither the 2012 board nor the Secretary took any particular look at Mr. Kursar's special forces qualifications. You're saying the Secretary of the Army was wrong? Yes. Are you an officer of the United States? It was incorrect. Are you an officer of the United States? Because that correction is final and conclusive on you, too, on the U.S. Attorney's Office. There was no correction that ever determined that Mr. Kursar was special forces qualified. All it did— Of course it does. He gets his rank and he gets his payment. But, Your Honor, if you look at the 2012— I didn't get that rank and payment because I'm not qualified. If you look at the 2012 board decision and the 2012 board application— Your brief told us there's no need to look at that. That's just a recommendation. The magistrate judges make recommendations all the time, but we look at what the district— No, that's not the position of our brief. We certainly invite you to look at the 2012 decision because it's very impactful here, as well as the application. No, but when they brought up this rule about binding decisions on corrections, which would have bound the 2020 board, you said the board didn't make any correction. But it wasn't a distinction. The Secretary of the Army did. What we said is— But the Secretary of the Army did. If I may, the 2012 board did make a correction. Our position was that they say that the 2020 board departed from the 2012 board correction, and our point was the 2020 board did not make a correction. But I want to get back to the point that I was making— Okay, because when we started this discussion, you agreed with me that, as I had read your brief, you were saying, you're right, they don't actually make the corrections. They recommend corrections. In some instances, but that's really not material here. No, it is to me right now.  Okay? But I want to get— They made a recommendation, and the Secretary of the Army acted on it, correct? Correct. I thought we were agreed that's what this JA-512 is. Correct. So the Secretary of the Army made an independent decision based on this recommendation, yes? Correct. That's what JA-512 reflects. I don't know that there was any deviation from what the board recommended or made it independent, but it is a separate— The whole board decision isn't here. There's a decision by the Secretary of the Army. Board decision is in the record. No, I mean a JA-512. Oh, sure. The Secretary of the Army didn't say, I hereby adopt the board's decision. The Secretary of the Army said, this is the status for which he is lawfully qualified and to which he is entitled. And it is, as we've agreed, a special forces status. Is there anything wrong I've said so far? Yes, there was no determination, no specific independent determination by anyone, the Secretary or the board, that Mr. Kursar belonged in a special forces role specifically that he was special forces qualified in 2012. The 2000 board application simply asked that the discharge be undone. It did not present any evidence about Mr. Kursar's special forces qualifications. Does this say that he's promoted? He was placed back in a special forces role—  Yes, Your Honor. And he was awarded a rank and salary that you only get if you qualify for special forces. But it was— Yes, yes. Okay, then that's binding on the 2020 board. Where did the 2020 board explain how— That is not binding on the 2020 board. Well, the correction is binding. All right. Then what am I misreading about 10 U.S.C. 1552A4? Let me make a subtle distinction. Mr. Kursar was placed in a special forces role and promoted within that role that he erroneously had before the 2012 board. He should not have been in a special forces role. But the 2020 board did not take him out of that role. It did not take his special forces—it did not correct those records promoting him to that role. He had a special—he had a separate request that he get the special forces tab. Now, the special forces tab is awarded to a service member who completes the special forces qualification course. And the board goes through all kind of reasoning as to why Mr. Kursar did not complete the special forces qualification course. Are there other people in the Army who—whom the secretary of Army has said are qualified for and shall be paid as consistent with that qualification, a special forces member, who do not get a tab? I just don't understand where the tab comes in. So the completion of the special forces qualification course qualifies you both to fill special forces roles and to receive the special forces tab. He did not complete the special forces qualification course. He was later mistakenly, erroneously placed into special forces roles, but that does not compel the board to erroneously award him the special forces tab. I guess I'm still—I'm going to ask my question. Sure. Who else is denominated by the secretary of the Army, a member of the special form—special forces and paid as much, but does not—paid as such, but does not get the tab? It's just a thing on the uniform. I mean, people in unique—Mr. Kursar's unique situation— Is there anyone—is he a situation of one? As far as I know, but his situation is that he— Does the tab come from the secretary of the Army deciding you are special forces qualified? No, this tab comes from an order by the commander of the John F. Kennedy Special Warfare Center and School. There has never been an order issued by that commander awarding—there was an order issued by that commander awarding Mr. Kursar the tab in 1994. That was rescinded in 1995, and that rescission of the tab has never been undone by the commander of that school. What—is there any economic value, salary-wise, retirement-wise, to having the tab as opposed to the status? Not that I know of. There may be some special forces veteran associations that Mr. Kursar could join if he had the tab. I'm not aware of any additional monetary benefit that he would get from the tab alone. And if the secretary of the Army says you are qualified and you get this salary, a commandant somewhere could say, but you still don't get the tab. An inferior officer could do that. Yes, because, again, the underlying qualification for both filling a special forces role and the tab is completion of that course. His counsel admitted in 1999 he didn't complete the course. His discharge paperwork from 1983 shows he didn't complete the course. The tab only comes—there's no other way to earn it other than going through this particular course? That's correct. You have to complete the course. And they all get it on graduation? I'm sorry? And they all get it, like, on graduation day? I'm not sure exactly when it's awarded, but course completion is a prerequisite for obtaining the tab. Is there anything else that's a prerequisite for it? Don't they have to immediately be deployed with special forces? Yes, so there's a service requirement that you have to fulfill after completing the course. Mr. Kursar obviously was separated from the active duty and did not fulfill that obligation. The board goes through all kinds of reasons that shows that he didn't get the tab. His DD-214 does not show a special forces designation. When he was released following his attendance at the school, it does not list the course among the education that he completed. If he had completed the course, he would have been issued an academic evaluation report. That is not in his record. He testified before the board that he did not have one. So the board found all kinds of evidence that he did not complete the course and, therefore, did not deserve the tab. I want to note that the board— No economic consequences for purposes of back pay or retirement? Not that I'm aware of, Your Honor. I can't tell you definitively. I've asked—I've spoken about that with the Army, and we're not aware of any. Sorry. The back pay claim, if it were teed up in a court with jurisdiction, wouldn't turn at all on this issue? I don't believe so, Your Honor, because that related to a separate correction, a separate process that he was pursuing post-remand, where he was reinstated to his reserve role and sort of given retirement points and back pay in connection with that restoration. The special forces tab is a declaration separate from all of that. Any more questions? Thank you very much. Please affirm. Complicated area. Thank you. Jurisdictionally and in the military. Okay. Mr. Bustere, we'll give you two minutes. Thank you very much, Your Honor. To start, I'd like to just respond that the 2020 decision does invalidate all prior board decisions. It says that in the decision. The board found that the fraud invalidates any of the applicant's other requests and any prior favorable board decisions. So the suggestion that that 2020 decision does not stand to actually change any records or in any way affect changes to his records is, in our view, not correct because it invalidates all of the prior relief from 2012. In 2012, and this goes to Your Honor's question of my counterpart here, the board granted full relief. That's what the board says. We grant full relief. Everything that he asked for was granted. It said we recommend that the secretary grant full relief. That's correct, yes. That's different than we granted. It is actually different. That's a valid correction, and thank you for that because that gets to my point. I read earlier that you've nowhere argued that it's a J512 decision by the Secretary of the Army that 2020 decision violated. I'm sorry. It's hard to violate a recommendation. Yes, Your Honor. However, the Secretary of the Army has to either, in 2012, when that decision was made, or when the recommendation was made by the Army Board of Corrections and Military Records, the Secretary of the Army has to either approve it or not approve it. Yeah. Right, and they didn't disapprove it. What the statute makes binding on the 2020 board is the Secretary's decision, not the prior board's decision. Right. Yes, Your Honor, but the Secretary, I mean, there's no evidence that he disapproved any of those bases of relief, and I think, in fact, there's evidence in the record that he did approve it because of J512. But one of the bases, one of the requested bases of relief was to reinstate the applicant in the Army Reserve and the Individual Ready Reserve as a noncommissioned officer in the rank of E7 in the military occupational specialty of 18 Delta Special Forces. Specifically says 18 Delta, 18D Special Forces, and 18D is the designator code for Special Forces. In J512, the document references 18 Delta as the MOS that he's being promoted in, which is Special Forces. You can't arrive at the conclusion rationally that the Secretary of the Army ordered that and then wasn't making any conclusion that he was Special Forces qualified. You can't ration anything that the Board of Corrections wouldn't have recommended granting full relief and just ignored the fact that the request was for reinstatement in Special Forces. Did he ask for the tab from the 2012 board? No, Your Honor, he did not. So this case is about the tab. I'm sorry? There's nothing in 2012 about the tab, and your appeal is about the 2020 board violating, contradicting the 2012 decision by not giving him the tab. You're about the tab. Yes, Your Honor. So the tab is pro forma once you're qualified. If you're Special Forces qualified, the tab is basically you get the tab. What is your best authority that it comes from being qualified as opposed to going through the training course? I think it's a 24-month deployment after that or maybe other things, too. But what's your best authority that? That seems to be the argument here, and I don't know what— It's the same. So to— It says it's the same. Well, I think that the standards for the—I don't have the regulatory standards for issuance of the tab in front of me, Your Honor. I honestly don't have that. However, I don't think it's disputed either by the government that the Special Forces qualification in Special Forces— Well, they just very much told us that what you have to do to get the tab is finish the course through the final day and have the 24-month deployment. There may be some other things.  I know there's disputes about whether he was deemed to have finished the course, but is there any way that he did a 24-month deployment with the Special Forces? Eventually, he did deploy in Special Forces. 24 months with the— No, not within the time that he left the course a few days early. Okay. Do you have any reason to think—do you know when the Special Forces tab is normally awarded? Is it at graduation, after they finish the course? Is it after the 24-month deployment? I do not have that. I don't have an answer for the court on that. I would say that the Special Forces qualification and the issuance of the tab, in our view, are two separate things but occur under the same standards. There's no differing standards for the tab and the qualification notation. Any more questions? We seem out of time, obviously. Yeah. Yes. I didn't mean to cut you off in a sentence, but if—that was the end of that point? That was the end of that point. Depending on any further questions from the court, Your Honor. Okay. Thank you very much. The case is submitted.
judges: Millett; Pillard; Katsas